UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN ANDREW KISTER,                )
                                   )
            Plaintiff,             )   Case No. 1:05-cv-604
                                   )
v.                                 )   Honorable Richard Alan Enslen
                                   )
UNKNOWN FORSHEE, *et al.*,         )
                                   )
            Defendants.            )
_____)

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

    I.       Factual allegations

Plaintiff is incarcerated at the Riverside Correctional Facility ("RCF"). In his *pro se* complaint, he sues RCF Doctors (first name unknown) Forshee, Jason Y. Kim, Craig Hutchinson and (first name unknown) Pandya; RCF Nursing Supervisor David A. DeGraaf; RCF Health Unit Manager Karmen M. Blount; RCF Regional Nursing Director Karen Van Setters; Michigan Department of Corrections Grievance Respondent Jim Armstrong; and John Doe medical doctors employed by Correctional Medical Services ("CMS").

Plaintiff claims that he has been denied adequate medical treatment for "genital-urinary-reproductive medical problems and lower abdominal problems" since 2001. Over the past four years, Plaintiff has been incarcerated at seven different facilities. He was transferred to RCF in November 2004. Plaintiff alleges that he suffers chronic pain and dysfunction in his lower abdomen and genitals, and has difficulties with his "body's waste removal functions." In addition, Plaintiff suffers from depression, for which he takes Prozac and Welbutrin. According to Plaintiff, his depression is the result of his chronic pain. Plaintiff further states that several mental health specialists have diagnosed him with Somatoform Disorder,[1] but contends that the mental health professionals believe that he has both physical and mental disorders. Plaintiff disputes the diagnosis and maintains that he has valid physical health issues.

On March 28, 2005, Plaintiff filed a sixteen-page Step I grievance, supported by over a hundred pages of medical records, claiming that he was being denied adequate treatment for his

---

[1] Somatoform Disorder, a new term for psychosomatic disorder, is defined as: "[a] chronic, severe psychiatric disorder characterized by many recurring clinically significant physical complaints (including pain and GI sexual, and neurologic symptoms) that cannot be explained fully by a physical disorder." *The Merck Manual*, § 186 (17th ed. 1999).

genital and urinary issues. (*See* Grievance No. RCF-05-03-00440-12F.) In his grievance, Plaintiff documents 89 appointments with health care staff from December 11, 2001 through March 14, 2005. During the first five months of his placement at RCF, Plaintiff was seen by health care staff 32 times. Plaintiff states in his grievance that since 2001, he has received at least 31 genital exams, 16 digital rectal exams, 26 urine tests, which included four urinary catheters. In addition, he was taken to the emergency room five times. Plaintiff's grievance documents other medical tests, including: a scrotal ultrasound; a gallbladder ultrasound; a CT scan of the abdomen and pelvis; multiple abdominal X-rays; and an Intravenous Pyelogram (IVP), an X-ray examination of the kidneys, ureters and urinary bladder. None of the tests resulted in the diagnosis of a treatable medical condition. Plaintiff also lists 21 different medications that were prescribed to him between December 11, 2001 and March 5, 2005, which do not include the pain medications that he also received. Plaintiff asserts that none of the medications were effective in alleviating his symptoms.

In many cases, Plaintiff disagrees with the conclusions drawn by the doctors from his test results. He also disagrees with the report issued by Dr. Tony Pinson on March 15, 2004, following a urology consultation. Dr. Pinson concluded that Plaintiff suffered "[v]ague abdominal pain with occasional urological discomfort which I feel to be within normal limits." Plaintiff maintains that Defendants have not done the right type of tests and that additional tests and procedures would lead to the diagnosis of a treatable condition. Specifically, Plaintiff requests cystoscopy, prostate ultrasound, investigative scrotal surgery and more extensive testing of seminal fluid, sperm and urine. He alleges that CMS denied approval for a bladder and prostate ultrasound ordered by a doctor at the Ionia County Community Hospital on December 30, 2004. CMS also refused a request in 2005 for a second urology consultation.

For relief, Plaintiff seeks an order requiring Defendants "to immediately exhaust any and all medical tests and procedures to diagnose and treat my medical issues . . ." He also requests an unspecified amount of compensatory and punitive damages for his physical pain and mental anguish.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

The Supreme Court has adopted a mixed objective and subjective standard for ascertaining the existence of deliberate indifference in the context of the Eighth Amendment:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The objective component of the test requires the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). A sufficiently serious medical need is predicated upon the inmate demonstrating that he "is incarcerated under conditions imposing a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 834). The subjective component, by contrast, requires a showing that the prison official possessed "a sufficiently culpable state of mind in denying medical care." *Id.* (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference requires a degree of culpability greater than mere negligence, but less than "acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. The prison official's state of mind must evince "deliberateness tantamount to intent to punish." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

Deliberate indifference does not include negligence in diagnosing a medical condition. *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995). Moreover, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Id.* at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical

attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* at 860 n.5; *see also Thomason v. Coble*, 100 Fed. Appx 522 (2004); *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000). A claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860-61.

A plain reading of the complaint and attachments reveals that Plaintiff has not been denied medical care. On the contrary, he was provided with extensive medical treatment and testing in response to his physical complaints. As set forth above, since 2001, Plaintiff has had 89 appointments with heath care staff and dozens of tests, including a scrotal ultrasound, a gallbladder ultrasound, a CT of the abdomen and pelvis, multiple abdominal X-rays, and an IVP. In addition, Plaintiff was prescribed 21 different medications, not including the pain medications that he also received. Plaintiff's complaint is that Defendants have been unable to diagnose a treatable physical condition and refuse to provide further specialized medical tests that Plaintiff believes will lead to a diagnosis. Plaintiff's claim is nothing more than a difference of opinion regarding medical treatment. As previously stated, such differences of opinion do not rise to the level of an Eighth Amendment violation, particularly when the prisoner has received as much medical treatment and testing as the Plaintiff in this case. Plaintiff, therefore, fails to state a claim upon which relief may be granted.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

DATED in Kalamazoo, MI:  
November 10, 2005

 /s/ Richard Alan Enslen  
RICHARD ALAN ENSLEN  
SENIOR UNITED STATES DISTRICT JUDGE